**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v.  ) | 2:22cr00042 |
| ) | **Electronic Filing** |
| **JERIAMIYAH EDWARDS** ) | |

**MEMORANDUM ORDER**

AND NOW, this 20th day of May, 2024, upon due consideration of defendant's motion to dismiss indictment with prejudice for violating defendant's speedy trial rights and the parties' submissions in conjunction therewith, IT IS ORDERED that [63] the motion be, and the same hereby is, denied.

Defendant contends that his rights under the Speedy Trial Act, 18 U.S.C. § 3161 ("the Act"), and the Sixth Amendment were violated when the court did not rule on defendant's motion to dismiss pursuant to the Second Amendment within 30 days of the parties' final written submissions on the motion and instead scheduled a hearing on the motion after defendant filed the instant motion to dismiss. According to defendant, the court had all the information it needed to resolve the motion promptly as of October 5, 2023, when defendant filed his reply brief to the government's sur-response (the defendant's reply being the fifth submission and fourth brief on the motion). According to defendant, this is borne out by the fact that the court resolved a number of similar motions in the fall of 2023 based solely on the submitted briefing. And neither party requested a hearing on the motion, so from defendant's perspective the court should have rendered a prompt disposition based solely on the briefing.

The government maintains that the scheduling of the hearing/argument on the motion on May 1, 2024, tolled the speedy trial clock at least through 30 days following the date of that hearing, and, as a consequence, defendant's rights were not violated in any manner. Because the attendant circumstances provided a sufficient basis for scheduling a hearing on defendant's

motion before rendering a final ruling, we agree with government and will deny defendant's motion to dismiss.

Under the Speedy Trial Act, a defendant must be tried within seventy days from the date of the filing of the information or indictment or from the date the defendant first appears before the court in which the charge is pending, whichever is later. 18 U.S.C. § 3161(c)(1). Although a defendant must be tried within seventy days, several periods of time are expressly excluded from this prescribed period. See United States v. Williams, 917 F.3d 195, 200 (3d Cir. 2019); 18 U.S.C. § 3161.

Two sections of the Act have a bearing on defendant's pending motion: sections 3161(h)(1)(D) and 3161(h)(1)(H). Under Section 3161(h)(1)(D), time is tolled from the filing of "any pretrial motion" until the "conclusion of the hearing on, or other prompt disposition of, [that] motion." This subsection excludes time in two circumstances: (1) "when a pretrial motion requires a hearing" and (2) when the motion "result[s] in a 'prompt disposition.'" United States v. Adams, 36 F.4th 137, 147 (3d Cir. 2022) (quoting Henderson v. United States, 476 U.S. 321, 329 (1986)). "The concept of 'prompt disposition' in turn is bounded by § 3161(h)(1)(H), 'which permits an exclusion of [no more than] 30 days from the time a motion is actually 'under advisement' by the court.'" Id. at 147-48.

Under section 3161(h)(1)(H), if a defendant files a motion and the court elects not to hold a hearing on the motion, the speedy trial clock stops on the date the motion is filed, and starts ticking again after the court has ruled on the motion but in no event later than "a maximum of thirty days after [the court] has 'received all the papers it reasonably expects' from the parties." Id. at 148 (quoting Henderson, 476 U.S. at 329). In contrast, if the court schedules a hearing on a motion, all the time between the filing of the motion through the date of the hearing is excluded from the 70-day clock even if the hearing is not prompt. Id. This is because "Subsection

(h)(1)[D] does not impose a reasonableness limitation on delay due to pretrial motions." United States v. Lattany, 982 F.2d 866, 874 (3d Cir. 1992) (citing Henderson, 476 U.S. at 326) ("The plain terms of the statute appear to exclude all time between the filing of and the hearing on a motion whether that hearing was prompt or not.").

Defendant's attempt to control and eliminate this court's discretion to schedule a hearing on his motion to dismiss pursuant to the Second Amendment in order to reap a dismiss under the Speedy Trial Act/Sixth Amendment is unavailing. While defendant does aptly note that neither party requested a hearing when the motion was extensively briefed in the fall of 2023, it does not follow that the court thereby is deprived of the ability to gain further insight on a pending motion through the benefit of scheduling a hearing and/or argument on the motion. To hold otherwise would deprive the court of the discretion to administer its criminal docket in a manner consistent with the rudimentary demands of due process and the pursuit of substantial justice. And there were several attendant circumstances that warranted a hearing on defendant's motion at the time it was scheduled.

First, as noted at the hearing, defendant's motion is grounded in an evolving area of the law. The repercussions from the United States Court of Appeals for the Third Circuit's *en banc* decision in Range v. Attorney General, 69 F.4th 96 (3d Cir. 2023), have been nothing short of remarkable. And the differing opinions and views on the impact of the holdings in Range and New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (Jun. 23, 2022), span a considerable array of divergent views. This divergence continues to grow. See, e.g., United States v. Duarte, -- F.4th -- (9th Cir. 2024) (holding over dissent that the defendant's prior convictions for vandalism, unlawful possession of firearms, drug possession and evading a peace officer were not "by Founding era standards, of a nature serious enough to justify permanently depriving [the defendant] of his fundamental Second Amendment rights" and declaring as a

3

consequence that § 922(g)(1) is unconstitutional as applied in reversing conviction). In such a setting the court has every reason to stay fully attuned to this evolving area of the law and call on the parties to provide whatever up to date insight they might have to offer before making a final decision on a defendant's pending motion.[1]

Moreover, the sound administration of due process counseled in favor of scheduling the hearing on defendant's motion to dismiss pursuant to the Second Amendment. As noted in the Opinion of May 3, 2024, the government takes the position that defendant bears the burden of advancing factual evidence to show his conduct was constitutionally protected by the Second Amendment. Opinion of May 3, 2024 (Doc. No. 68) at p. 6, n.3 (citing Government Sur-Reply (Doc. 59) at p. 1-4). Several members of the Western District have considered the specific circumstances of a defendant's criminal history and/or firearm possession when considering an as applied challenge and whether those circumstances are sufficiently analogous to those presented in Range. See United States v. Jackson, Crim. No. 22-18, Dkt. No. 113, at 8-9 (W.D. Pa. Oct. 6, 2023) (Stickman, J.) (considering defendant's prior offense conduct, use of firearms during that conduct and status on supervision in resolving the defendant's as applied challenge); United States v. Terry, Crim. No. 20-43, Dkt. No. 261, at 6-8 (W.D. Pa. Sep. 14, 2023) (Ranjan, J.) (considering the defendants' status as "probationers and parolees"); United States v. O'Connor, Crim. No. 03-134, 2023 WL 5542087, at *4 (W.D. Pa. Aug. 29, 2023) (Conti, J.) (noting the emphasis that Range placed on Brain Range's past offense conduct and its stark contrast with the movant's); United States v. Law, Crim. No. 20-341, Dkt. No. 60, at 1 (W.D. Pa. October 27, 2022) (Bissoon, J.) (rejecting any "as applied" challenge because the defendant failed "to

---

[1] Indeed, a close review of the decisions defendant highlights in support of his contention that this court could have ruled on the matter without a hearing reveals that this court's assessment of the area has continued to expand with the ongoing consideration of the evolving precedent issued by other courts. See, e.g., Opinion of May 3, 2024 (Doc. No. 68) at p.2, n.1. And of course, this court is free to reverse course in the event that a party (such as defendant) convinces it that the changing legal landscape warrants such a result. To be sure, such a result is not foreclosed merely because a defendant strategically proclaims it is so.

demonstrate why one would be appropriate") & Dkt. No. 96 at 1-2 (rejecting the defendant's motion for reconsideration based in part on the prohibitions on his possession, the nature of his prior convictions and the offenses committed with the use of a firearm), appeal docketed, No. 23-2540 (3d Cir. Aug. 24, 2023).

To the extent information beyond the allegations of the indictment/information is to be taken into account in considering an as applied challenge, the issue arises as to when that information is to be placed before the court for proper consideration. And relatedly when must the defendant be given a corresponding ability to present historical information about the factors central to the majority's disposition in Range: the prior felon's possession/use of a firearm and the nature of his or her past criminal conduct? Such information certainly is not germane to a trial on the merits of the § 922(g)(1) charge. And there is nothing to suppress. So it appears that the logical and procedurally appropriate avenue for that information to come before the court is through a hearing on the defendant's "as applied" challenge. After all, if the defendant has a burden to prove analogous circumstances to those presented by Brian Range in order to prevail on his Second Amendment challenge, he or she must be given an opportunity to meet that burden or at least rebut and/or displace any such facts bearing on those inquiries that are being advanced by the government.[2] Due process would appear to demand as much.

In the instant case, defendant's "as applied" challenge was presented through defendant's motion to dismiss. Because a fair argument can be made that defendant has the burden to prove the circumstances of his charged possession and criminal history were sufficiently analogous to the circumstances presented in Range to support an as applied challenge, and because such factual information is both beyond the bare allegations of the indictment and at least relevant to the resolution of the challenge as framed by the majority analysis in Range, this court afforded

---

[2] Of course, the allegations in the indictment do not speak to or shed light on the purpose for which defendant possessed the handgun or the specific factual details of his prior conviction(s).

defendant the ability to augment the record with such factual information. The fair administration of justice appears to warrant as much. The hearing/argument on defendant's motion to dismiss pursuant to the Second Amendment afforded defendant that opportunity.

The need for this court to 1) stay attuned to the evolving area of law under consideration, 2) give defendant the opportunity to persuade the court that recent developments have a bearing on the court's decision and 3) afford defendant the opportunity to present factual information in the areas central to the majority's analysis in Range provided sound reasons for conducting the hearing prior to ruling on defendant's motion to dismiss pursuant to the Second Amendment. For these reasons, defendant's efforts to render the hearing in this case inconsequential are specious.

Against this backdrop, defendant's attempt to rely on the reasoning of Judge Haines in United States v. Noble, 509 F. Supp.3d 399 (W.D. Pa. 2020), is misplaced. There, the defendant had elected to proceed *pro se* early in the case and filed a myriad of motions, which eventually included a motion to dismiss pursuant to the Speedy Trial Act. In ruling on the motion, Judge Haines rejected the government's argument that a pending motion for review of a detention order and at least two motions to dismiss tolled the speedy trial clock for an inordinate period of time. Id. at 408-11. The government had failed to respond to the motion for review of detention order for over two years and the court failed to take action on the motion during this time. The court then held a hearing in an "attempt to remedy this oversight by allowing [the] Defendant to at least be heard [on the two year-old motion]," and reasoned that the "two-year period of oversight and neglect by the Government and the Court" distinguished the case from the active litigation and attentiveness reflected in Henderson. She declined to treat the hearing on the motion to review as one triggering the application of Henderson in order to avoid creating an incentive for the courts and the government to ignore such motions for such an inordinate period of time. Id.

6

at 409 ("To hold otherwise suggests Defendant would be better served by the Court continuing to ignore the pending motion.").

Judge Haines also rejected the government's contention that a number of pending motions also tolled the clock because the court still had the opportunity to conduct a hearing on the motions. These included two motions to dismiss which according to the government raised allegations that would require the scheduling of a hearing to permit the defendant the opportunity to substantiate his claims, as well as a number of submissions which appeared to be amendments to motions. Id. at 409-10. The government again had failed to respond to the motions to dismiss for over two years, and when it did respond, it took the position that the motions raised contentions that had already been ruled upon and were frivolous and irrelevant in any event. Id. at 410. Upon review, Judge Haines determined that "the motions and filings the Government states are likely to require a hearing *do not plausibly* require a hearing." Id. at 411 (emphasis added).

Here, defendant's motion to dismiss pursuant to the Second Amendment was not a frivolous motion that was invoked by the government as mechanism to trigger Henderson only after a motion pursuant to the Speedy Trial Act was filed. The motion did not sit dormant and unaddressed by both the government and the court for an inordinate period of time. To the contrary, the motion embodied a very active and important aspect of the litigation between the parties. Further, far from being a motion that could not plausibility require a hearing, the motion raised a serious claim under Bruen and presented issues that have divided the courts and judges across the country. These aspects of defendant's motion to dismiss pursuant to the Second Amendment readily distinguish it from the motions and circumstances under consideration in Noble.

7

For the reasons set forth above, defendant's motion to dismiss for violation of the Speedy Trial Act/Sixth Amendment is unavailing.  Consequently, the motion will be denied through the entry of this Memorandum Order.

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

cc:　　Shaun E. Sweeney, AUSA
　　　　Sarah E. Levin, AFPD

　　　　(*Via CM/ECF Electronic Mail*)